## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LISA HOLMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Case No. 3:19-cv-0993-M |
| | § | |
| THOMSON REUTERS (TAX & | § | |
| ACCOUNTING), INC., | § | |
| | § | |
| Defendant. | § | |

## <u>ORDER</u>

Before the Court are Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 34) and Plaintiff's Motion for Leave to Supplement Her Opposition and/or File a Surreply (ECF No. 44). For the reasons stated below, the Motion for Partial Judgment on the Pleadings (ECF No. 34) is GRANTED IN PART and DENIED IN PART. Because this Order does not rely on Plaintiff's proposed supplement or surreply, the Plaintiff's Motion for Leave (ECF No. 44) is DENIED AS MOOT.

## I.    Background

This is a gender and age discrimination suit brought by Plaintiff Lisa Holmes, a 60-year old who identifies as a gay female, against her former employer, Defendant Thomson Reuters (Tax & Accounting), Inc. (ECF No. 1 ¶¶ 2, 8, 9). Plaintiff alleges that she was employed by Defendant in various positions for thirty-three years, until she was terminated on February 22, 2018. (*Id.* ¶ 20). Plaintiff asserts that she was terminated because of her age and gender. (*Id.* ¶¶ 2–3, 103). Plaintiff states that she filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") and that the EEOC issued a Notice of Right to Sue. (*Id.* ¶¶ 6a–6b).

On February 22, 2019, Plaintiff filed this lawsuit. In her Complaint, Plaintiff brings

disparate treatment and disparate impact employment discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*[1]

Defendant moves under Federal Rule of Civil Procedure 12(c) to dismiss Plaintiff's disparate impact claims under Title VII and the ADEA.  Defendant attaches three documents to its Motion for Partial Judgment on the Pleadings: (1) the EEOC's Dismissal and Notice of Rights, (2) Plaintiff's EEOC Charge of Discrimination, and (3) the EEOC's Notice of Charge of Discrimination.  (*See* ECF No. 36).  In her Opposition, Plaintiff attaches, among other things, her EEOC Claim Statement, a 13-page document detailing Plaintiff's discrimination claims.[2]  (*See* ECF No. 40).

## II.    Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  A Rule 12(c) Motion is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Hebert*

---

[1] Plaintiff also brought claims for violations of the New York State Human Rights Law, N.Y. Exec. § 290, *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.*, but those claims were dismissed by Judge Jesse M. Furman of the Southern District of New York before he transferred the case to this Court.  (*See* ECF No. 18).

[2] When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id.*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (citation omitted).  Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  Here, Plaintiff references the Charge and Notice of Rights in her Complaint, and the Court takes judicial notice of the Claim Statement, which the parties agree was part of Plaintiff's public EEOC file.  (*See* ECF No. 48 at 8).  Thus, the Court considers the EEOC Charge, the Notice of Rights, and the Claim Statement without converting Defendant's Rule 12(c) Motion into a motion for summary judgment.

*Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).  Rule 12(c)

motions are governed by the same standards that apply to Rule 12(b)(6) motions to dismiss.  *See*

*Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The "[f]actual

allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"

*Twombly*, 550 U.S. at 555 (internal citations omitted).

## III.    Analysis

Defendant argues that Plaintiff has failed to exhaust her administrative remedies with

respect to her disparate impact claims under Title VII and the ADEA, and, alternatively, that

Plaintiff has failed to state cognizable disparate impact claims.  (*See generally* ECF No. 35).  The

Court DENIES Defendant's Rule 12(c) Motion with respect to its exhaustion argument, but

GRANTS the Motion that Plaintiff has not stated a claim.

### A.    Failure to Exhaust Administrative Remedies

A plaintiff alleging employment discrimination under either Title VII or the ADEA must

exhaust her administrative remedies before pursuing her claims in federal court.[3]  *Bettcher v.*

---

[3] Because the exhaustion of administrative remedies requirement under the ADEA is nearly identical to
that of Title VII, *see* 42 U.S.C. § 2000e-5 *and* 29 U.S.C. § 626, the Court finds that cases interpreting the

*Brown Schools, Inc.*, 262 F.3d 492, 494 (5th Cir. 2001); *Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990).  A plaintiff exhausts her administrative remedies by filing a charge of discrimination with the EEOC and receiving a notice of right to sue from the EEOC.  *Blanks v. Am. Airlines, Inc.*, No. 4:08-cv-43-A, 2008 WL 3834041, at *3 (N.D. Tex. Aug. 14, 2008); *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74, 77 (5th Cir. 1982).  The requirement to exhaust administrative remedies "serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving the employer some warning as to the conduct about which the employee is aggrieved."  *Hayes v. MBNA Tech., Inc.*, No. 3:03-cv-1766-D, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (internal citation omitted).

An action filed in federal court under Title VII or the ADEA "is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Young*, 906 F.2d at 179 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) (internal quotations omitted)); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 (N.D. Tex. 2011).  In other words, a complaint filed pursuant to Title VII or the ADEA may encompass any kind of discrimination "like or related to" allegations contained in the EEOC charge.  *Sanchez*, 431 F.2d at 466.

Defendant argues that Plaintiff's disparate impact claims under Title VII and the ADEA are not like or related to the allegations in Plaintiff's Charge.  (ECF No. 35 at 2–5).  Unlike a

---

requirement in one statute are controlling as to the other.  *See, e.g., Coleman v. New Orleans & Baton Rouge Steamship Pilots' Ass'n*, 437 F.3d 471, 479 n. 7 (5th Cir. 2006) ("The terms 'employer' and 'employee' have been identically treated under the ADEA and Title VII.  Thus, cases interpreting the terms under either statute may be considered in determining whether the defendants are employers for the purposes of the ADEA."); *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004) ("The standard of proof for Title VII discrimination claims also applies to . . . ADEA claims."); *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 896 n. 2 (5th Cir. 2002) ("This circuit applies the *McDonnell Douglas* rubric to both Title VII and ADEA claims.").

disparate treatment claim, which requires an employee to show that her employer intentionally discriminated against her, a disparate impact claim involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group and cannot be justified on business necessity." *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996) (internal quotation and citation omitted).  To plead a disparate impact claim under Title VII, a plaintiff must show "(1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275 (5th Cir. 2008) (internal citation omitted).  To plead a disparate impact claim under the ADEA, a plaintiff must "(1) identify a specific facially neutral employment policy or practice; (2) establish causation by presenting 'statistical evidence of a kind and degree sufficient' to show (3) that the practice caused an adverse employment action (4) that disparately affected workers forty years of age or older." *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 257–58 (N.D. Tex. 2011) (internal citation omitted).

Plaintiff's Charge states the following:

I.    PERSONAL HARM:
On or about February 22, 2018, I was discharged from my position of Senior Director of Support Services and Operations Effectiveness by Mr. Bill Chase, VP of Transformation, because of my age, 60, and sex, female.

II.    RESPONDENT'S REASON FOR ADVERSE ACTION:
I was told by Mr. Chase that I violated employee code of conduct by influencing the hire of an employee.

III.    DISCRIMINATION STATEMENT
I believe that I was discriminated against because of my age, 60, in violation of the Age Discrimination in Employment Act of 1967.  I also believe that I was discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 36 at 3).  Defendant contends that Plaintiff's Charge only addresses a "past incident of

5

individual disparate treatment" and does "not identify a neutral employment policy or allege a disparate-impact resulting from such policy."  (ECF No. 35 at 6).

Plaintiff responds that to determine whether she exhausted her disparate impact claims, the Court should look not only at her Charge, but also at her Claim Statement.  Plaintiff states the following in her Claim Statement:

> In the last two years, significant female talent over 40 has been adversely affected by [Defendant's] decisions regarding hire [sic] terminations, layoffs, gender diversity, training support and promotional opportunities.

> Former legal and internal gender and age complaints have been made and disregarded without proper investigation and/or remediation.  For example, Kimberly Christopher, another former female [ ] employee [of Defendant], also filed a claim against [Defendant] based on race and gender discrimination.  Former [ ] employee [of Defendant], Michelle Edwards, resigned due to lack of promotional opportunity and disparate treatment.  She has since asserted a legal and/or administrative claim against [Defendant] based on race and gender discrimination.

> Joe Harpaz, Managing Director, Corporate Markets, has shown a pattern and practice of not hiring and/or promoting female executives as talented leaders. Renee Kaspar, former female HR Manager, complained of a pattern in 2016 spanning to the present that female VP(s) were unconsciously or purposefully not promoted, developed or invested in.  Shortly thereafter, Ms. Kaspar was fired in retaliation for her complaints.

> Further examples of other high level females over 40 adversely impacted were Carla Yrianson, VP, and Diane Manning, both [of whom] were denied promotions then shortly after laid off in a RIF.  Other female talent over the age of 40 terminated were Linda Kaufman, Margorie Goldsmith, Lisa Schwie and Tammy Sternal. Upon information and belief, there have been recent layoffs in 2018 similarly discriminated against based on their gender and age.

(ECF No. 40 at 61–62).  Plaintiff contends that her disparate impact claims are like or related to these statements, which explain that Defendant's employment practices "disparately impacted her and other members of her protected class (women above the age of 40)."  (ECF No. 39 at 2).

The threshold question the Court must answer is what documents it may consider to determine whether Plaintiff exhausted her disparate impact claims.  Defendant asserts that

Plaintiff's Claim Statement is unsworn and is not referred to or incorporated in the Charge.

(ECF No. 41 at 3–4).  Defendant argues that this Court should apply the rule established by

Judge Fitzwater in *Hayes*, which states that,

> [W]hen determining whether a claim has been exhausted, the decision is to be based on the four corners of the EEOC charge, but the court may also consult related documents, such as a plaintiff's affidavit, her response to the EEOC questionnaire, and attachments to the response, when (1) the facts set out in the document are a reasonable consequence of a claim set forth in the EEOC charge, and (2) the employer had actual knowledge of the contents of the document during the course of the EEOC investigation.

2004 WL 1283965, at *6 (applying *Hayes* test to Title VII claim); *see Kojin v. Barton Protective*

*Servs.*, 339 F. Supp. 2d 923, 929 (S.D. Tex. 2004) (applying *Hayes* test to ADEA claim).

Defendant contends that under *Hayes*, because (1) the facts set out in the Claim Statement are

not a reasonable consequence of Plaintiff's disparate treatment claim asserted in her Charge, and

(2) Defendant did not receive the Claim Statement until after the EEOC's investigation,[4] the

Court should not consider the Claim Statement to determine whether Plaintiff's disparate impact

claims have been exhausted.  (ECF No. 41 at 4–6).

The *Hayes* rule is generally applied when a plaintiff asks the court to consider additional

documents that were filed separately, either temporally or physically, from the formal charge.

*See, e.g., Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-CV-4997-D, 2016 WL 1161784, at *5

(N.D. Tex. Mar. 22, 2016) (applying *Hayes* test to documents submitted to the EEOC before the

plaintiff's charge); *Kelly v. Capitol One Auto Fin.*, No. 3:08-CV-0266-D, 2008 WL 2653202, at

*4 (N.D. Tex. July 7, 2008) (same).

However, in *Patton v. Jacobs Engineering Group, Inc.*, 874 F.3d 437, 443 (5th Cir.

2017), the Fifth Circuit found that the plaintiff's intake questionnaire should have been

---

[4] The EEOC issued the Notice of Rights the same day that Plaintiff filed her Charge.  (ECF No. 36 at 1, 3).

considered part of his formal charge, which, the court noted, directs complainants to attach additional sheets if necessary. (*See, e.g.,* ECF No. 36 at 3 (Plaintiff's Charge states, "If additional paper is needed, attached extra sheet(s)).").  In *Patton*, the plaintiff filed the intake questionnaire together with his formal charge on the same day.  *Id.*

It is not clear from the pleadings and the documents reviewed by the Court under the Rule 12(c) standard whether Plaintiff's Claim Statement was attached as "additional paper" to her Charge.[5]  To obtain dismissal under Rule 12(c), Defendant's "successful affirmative defense [must] appear [ ] clearly on the face of the pleadings." *Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-CV-4997-D, 2015 WL 1757358, at *2 (N.D. Tex. Apr. 17, 2015) (internal quotation and citation omitted); *see id.* ("Stated another way, the defendant is not entitled to dismissal under Rule 12(c) unless the plaintiff has pleaded [her]self out of court by admitting to all of the elements of the defense.") (internal quotation and citation omitted); *Davis v. Ft. Bend County*, 893 F.3d 300, 307 (5th Cir. 2018) ("Failure to exhaust is an affirmative defense that should be pleaded.").  Because the pleadings are unclear as to whether Plaintiff's Claim Statement was attached to her Charge, the Court finds that Defendant has not conclusively established its exhaustion defense and is not entitled to dismissal under Rule 12(c).  Defendant may pursue its position in a motion for summary judgment.

> ### B.      Failure to State Disparate Impact Claims

Defendant argues that even if Plaintiff has exhausted her administrative remedies with respect to her disparate impact claims, she has not adequately pleaded a disparate impact claim under Title VII and the ADEA because Plaintiff has not alleged a specific employment practice

---

[5] Plaintiff submits a declaration stating that her Claim Statement was attached to the Charge. (*See* ECF No. 45 at 2).  Because, as discussed above, the Court does not find it appropriate to convert Defendant's Rule 12(c) Motion to a Summary Judgment Motion at this stage, the Court does not consider Plaintiff's declaration to that effect.

or alleged a statistical disparity.  (ECF No. 35 at 6–12).

### 1.    Specific Employment Practice

To state a disparate impact claim, a party must identify "a facially neutral policy . . . that, in fact, has a disproportionately adverse effect on a protected class."  *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006).  "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.  Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities."  *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (emphasis in original) (internal citation and quotation omitted); *Powell*, 776 F. Supp. 2d at 257 (internal citation omitted).  A plaintiff must "identif[y] [a] specific test, requirement, or practice within [an employment policy] that has an adverse impact . . . ."  *Smith*, 544 U.S. at 241.

In her Opposition to Defendant's Motion, Plaintiff asserts that her Complaint identifies the following specific policies of Defendant:

> (1) a subjective evaluation system for performance reviews whose design facilitates manipulation and/or bias by the decision-maker without any meaningful accountability; (2) a layoff or "Reduction in Force" policy that allows for the termination of employees without good cause; (3) hiring, firing, training, and promotion practices which, in being determined by subjective decision making and evaluation systems that allow for bias and lack a meaningful structure of accountability, result in disproportionately suppressed pay and promotional opportunities, and more adverse employment actions, including termination, for female employees, especially those in high up positions, and especially those over the age of 40.

(ECF No. 39 at 12–13).

Plaintiff's Complaint states the following:

- "In the last two years, significant female talent over 40 were adversely affected by [Defendant]'s decisions regarding gender diversity, performance evaluations, ratings, compensation, terminations, layoffs, hiring, training, support and promotional opportunities."  (ECF No. 1 ¶ 112; *see also id.* ¶ 168 (Defendant "discriminated against Plaintiff on account of her gender in its treatment, performance ratings,

9

support, opportunity, training, promotion and termination during her employment.")).

- "At or about the time of Plaintiff's termination and in the following months, various other colleagues of Plaintiff were replaced by younger workers. [Defendant] implemented other layoffs and terminations of employees of a protected class including and in particular, age and/or gender in the TRTA division that adversely impacted women and older workers." (*Id.* ¶ 146).

- Defendant "has, by using facially neutral employment practices and on other occasions, using excessively subjective standards for performance, and/or selection of employees for hire, promotion and/or dismissal, caused a significant, adverse and discriminatory impact on employees over the age of 40." (*Id.* ¶ 177; *see also id.* at ¶ 187).

- "At all relevant times, [Defendant] evaluated employee performance at the Director level and above on a scale of 0 to 5. The rating level '3' was for employees who 'achieved' expectations. The rating level '4' was for employees who 'exceeded' expectations. The rating level '5' was for employees who 'far exceeded' expectations." (*Id.* ¶ 114).

The Court finds that these allegations merely point to generalized policies and do not identify any specific test, requirement, or practice within Defendant's employment policies that is responsible for any allegedly discriminatory impact. *See Brown v. Wyndham Hotel Mgmt. Inc.*, No. H-16-00015, 2016 WL 2595073, at *5 (S.D. Tex. May 5, 2016) ("It is not enough to label a system for evaluating employee performance as 'subjective' or 'aggressive' without explaining how the system operates and what makes it discriminatory in impact."); *see also Oinonen v. TRX, Inc.*, No. 3:09-CV-1450-M, 2010 WL 396112, at *4 (N.D. Tex. Feb. 3, 2010) (dismissing Plaintiffs' disparate impact claim under the ADEA where Plaintiffs "point to the layoff itself as the practice that disparately impacted older workers," but "do not identify any specific test, requirement, or practice in the layoff selection process that is allegedly responsible for the purported statistical disparities").

Plaintiff argues that she has sufficiently pled that Defendant's "'excessively subjective standards' for reviewing performance, and making hiring, promotional, and dismissal decisions

10

constitute disparate-impact discrimination" because the Complaint alleges "how her performance review was arbitrarily reduced when a new male supervisor, Vice President William Chase, was assigned to her, and that the decision to fire her was made by all male managers, without any meaningful system of accountability to ensure that there was good cause for her firing . . . ." (ECF No. 39 at 15).

Plaintiff is correct that subjective or discretionary decision-making may constitute an employment practice and thus be subject to a disparate impact analysis. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991 (1998); (ECF No. 39 at 15). However, a disparate impact claim must allege that the practice itself is the cause of the adverse effect. *See Watson*, 487 U.S. at 987. Thus,

> [w]here the plaintiff establishes that a subjective policy, such as the use of discretion, has been used to achieve a racial disparity, the plaintiff has shown disparate treatment. . . . On the other hand, where the plaintiff establishes that the existence of the policy itself, rather than how the policy is applied, resulted in a racial disparity, the plaintiff has shown disparate impact.

*Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, No. 3:08-CV-0546-D, 2016 WL 4494322, at *7 (N.D. Tex. Aug. 26, 2016) (internal citation omitted).

Here, the Court finds that Plaintiff's Complaint challenges the results of Defendant's "excessively subjective standards for performance, and/or selection of employees for hire, promotion and/or dismissal," not the existence of the discretionary standards themselves. (*See, e.g.,* ECF No. 1 ¶¶ 63, 132 ("By engaging in a pattern and practice of restricting the number of female managers receiving an 'exceeds' performance rating, [Defendant] has effectively denied equal real opportunity to advance females to high level executive positions within [Defendant].").; *id.* ¶¶ 102, 105 ("Plaintiff's termination was pretextual and discriminatory for illegal purposes.")). Thus, Plaintiff's allegations relating to Defendant's alleged "excessively

11

subjective standards" support a disparate treatment claim, not a disparate impact claim.

## 2. Statistical Disparity

Defendant argues that Plaintiff's disparate impact claim under the ADEA fails because the Complaint does not allege a statistical disparity as to age.[6]  (ECF No. 35 at 11–12).  Plaintiff responds that her Complaint is sufficient, because it "states that [Defendant's] employment policies and practices imposed disproportionate harms on [Defendant's] female employees (and especially female executives) over the age of 40, and provides extensive statistical data to substantiate that fact."  (ECF No. 39 at 12).

> In her Complaint, Plaintiff alleges that,

> Examples of [Defendant's] higher managerial level female employees over 40 that were adversely impacted by [Defendant's] gender and/or age biased [sic] include[,] but [are] not limited to, "CY", "VP", and "DM".  These women were denied promotions and then shortly after laid off.

> Other female managerial talent over the age of 40 recently terminated and/or adversely impacted during their employment with Defendant were "LK", "MG", "LS", "TS", "LT", "TM", "ME" "NB" and "BS.  Female VPs were also adversely impacted including JW and AC.

> Recently separated employees in a protected class suspect for discriminatory motive in 2018 include: DF (age); DH (age), EM (gender and age), LH (gender and age), and during 2016–2017, DW (age), DS (age), BN (age), MD (gender and age), SZ (age), RB (age), PH (gender and age), DM (gender and age), MG (gender and age), CH (age), BS (gender and age), and OP (age).

(ECF No. 1 ¶¶ 138–40).  Because the Court determined that Plaintiff has not pled sufficiently a facially neutral policy or practice, it cannot determine whether Plaintiff has pled sufficiently that such a policy caused a statistical disparity.  *See Inclusive Communities Project, Inc.*, 2016 WL 4494322, at *6 ("[T]he court cannot evaluate whether the offending policy caused a statistically significant disparity without knowing the offending policy with precision.").

---

[6] Defendant asserts that "the same problem exists with respect to [Plaintiff's] gender disparate-impact claim . . . [, but] is not at this time pressing that deficiency . . . ."  (ECF No. 35 at 12 n. 4).

IT IS ORDERED that Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 34) is GRANTED IN PART and DENIED IN PART.  Defendant's exhaustion argument is DENIED WITHOUT PREJUDICE to it being reasserted at summary judgment.  Plaintiff's disparate impact claims under Title VII and the ADEA are DISMISSED WITHOUT PREJUDICE for failure to state a claim.  Plaintiff has twenty days from the date of this Order to file an Amended Complaint addressing the deficiencies discussed in this Order.

**SO ORDERED**.

January 13, 2020.

BARBARA M. G. LYNN
CHIEF JUDGE

13